Leonard Zack (LZ8144)
LEONARD ZACK & ASSOCIATES
405 Park Avenue, 10th Floor
New York, NY 10022
(212) 754-4050 tel.
Counsel for Plaintiff Richard Yarusso



THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

RICHARD YARUSSO,

            Plaintiff,

  – against –

THE CITY OF NEW YORK and the
NEW YORK CITY POLICE DEPARTMENT,

            Defendants.

-----------------------------------------------------------------x

Civil Action #:

**VERIFIED COMPLAINT**

Plaintiff RICHARD YARUSSO (hereinafter "Yarusso" or alternatively "Plaintiff") by and through his undersigned counsel, Leonard Zack & Associates files this Complaint against Defendants THE CITY OF NEW YORK and the NEW YORK CITY POLICE DEPARTMENT (hereinafter "City" and "NYPD" or alternatively "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.    This is an action for damages and other relief brought pursuant to the Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. §12101 et seq., the New York State Executive Law §296 and §297 and the New York City Administrative Code §8-107 in

1

which plaintiff engaged in employment discrimination against him based upon disability.

2.  Plaintiff seeks appropriate monetary relief as well as appropriate equitable and other relief to redress the wrongdoings complained of herein.

## STATEMENT PURSUANT TO LOCAL RULE 9

3.  For the purpose of complying with Local Rule 9, plaintiff states that he has no corporate parent, subsidiary or affiliate and that there are no other interested parties.

## JURISDICTION AND VENUE

4.  Defendant, the City of New York, hereinafter referred to as "City" is a municipal corporation, a political subdivision of the State of New York, and an entity amenable to suit in its own name herein.

5.  Defendant, the New York City Police Department, hereinafter referred to as "NYPD", is and was at all times relevant herein, a department or agency of the respondent City, having its principal office at One Police Plaza, New York, New York 10038.

6.  Venue is proper in the Southern District of New York pursuant to 42 U.S.C. §2000e-5(f)(3). The basis of venue is that the unlawful employment practice complained of herein, the employment records relevant to such practice are maintained and administered in, and the judicial district in which the plaintiff would have worked but for the alleged unlawful employment practice, as well as the principal office of the defendant NYPD are all located in New York County, a county within the geographic jurisdiction of the Southern District of New York.

7. Plaintiff timely pursued all applicable administrative remedies. On or about April 27, 2011 plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No. 520-2011-01372) against the defendants herein.

8. Plaintiff received a right to sue letter dated May 31, 2011. This action is commenced within the 90 day requirement of the right to sue letter and within 90 days of plaintiff's receipt of the right to sue letter. A copy of the right to sue letter is annexed hereto.

## THE PARTIES

9. At all times mentioned herein, plaintiff Richard Yarusso is and was an individual citizen of the State of New York with an address of 2 Willoughby Avenue, Coram, New York 11727.

10. Defendant, the City of New York, hereinafter referred to as "City" is a municipal corporation, a political subdivision of the State of New York, and an entity amenable to suit in its own name herein.

11. Defendant, the Police Department of the City of New York, hereinafter referred to as "NYPD", is and was at all times relevant herein, a department or agency of the respondent City, having its principal office at One Police Plaza, New York, New York.

## DEMAND FOR A TRIAL BY JURY

12. Plaintiff demands a trial by jury.

## BACKGROUND FACTS APPLICABLE TO ALL CAUSES OF ACTION

13. Plaintiff Richard Yarusso was born on June 2, 1968. He is currently 43 years old.

14. Plaintiff Richard Yarusso joined the Police Department on February 28, 1994, rising from the rank of Patrolman to Lieutenant. During this entire period of time, Plaintiff Yarusso had an unblemished record of distinguished service with no history of disciplinary charges.

15. On August 24, 2009 at approximately 1500 hours, Lt. Richard Yarusso was assigned to the Wingate Concert Series as part of the Uniform Task Force School Safety Division Unit within the confines of the 71st Precinct of Defendant NYPD.

16. Lt. Yarusso was patrolling near the concert stage during this assignment. The noise level at this concert was extremely loud. Lt. Yarusso was exposed to this extreme noise for a prolonged period of time. As a result of this exposure, he sustained loss of his hearing in his left ear.

17. Medical documentation from the National Institute on Deafness and Other Communications Disorders (NIDCD) and the U.S. Department of Labor, Occupational Safety and Health Administration (OSHA), noise levels at or above 85 decibels are known to cause hearing loss damage. It is also known that extreme noise levels of a music concert might be measured at 100 to 140 decibels. Exposure to high intensity sound is a leading cause of damage to sensory cells. Prolonged exposure to sounds above 85 decibels may cause permanent hearing loss.

18. After leaving the concert, Lt. Yarusso was driving his car on the Long Island Expressway, New York, and rolled down the windows of his vehicle. As the wind started blowing into his vehicle, it irritated his ear to the point of severity causing him to

immediately roll up the window. This type of irritation never occurred prior to this incident.

19. The following day, August 25, 2009, Lt. Yarusso was assigned as the School Safety Uniform Task Force Platoon Commander in RMP1531 on the day shift. His vehicle operator was Police Officer Paul Shivers. As P.O. Shivers was driving the plaintiff, he rolled down the windows in the police vehicle. Once again, Lt. Yarusso complained of irritation in his left ear from the wind blowing in the vehicle.

20. Thereafter, on August 26, 2009, while having a cell phone conversation with his wife, plaintiff Yarusso realized that he couldn't hear out of his left ear and that the damage from the noise exposure at the concert was more extensive than he originally detected. This detection caused him to seek immediate medical attention.

21. In addition to treating with his primary care physician, Lt. Yarusso sought help from the NYPD surgeon, Dr. Dann and the department's ENT specialist, Dr. Kramer. By the time Lt. Yarusso was examined by these doctors, he had forgotten about being assigned to the Wingate Concert. It wasn't until he reviewed his memo book entries that Lt. Yarusso refreshed his memory about the extremely loud noise at the concert. He immediately informed his doctors of this development. Further, he advised the doctors that he had no symptoms of tinnitus.

22. As a result of the loss of hearing in his left ear, Lt. Yarusso was placed on restricted duty on or about October 13, 2009 which meant that he was restricted to an inside desk job. Although Lt. Yarusso sees the police surgeon once a month, he continues to be on restricted duty to the present time.

23. Lt. Yarusso suffered his hearing loss as a result of being hurt on the job. A Certification of Line of Duty Injury/Authorization for Treatment was issued on March 22, 2010.

24. A Line of Duty Injury Report was filed by Lt. Crowley on April 8, 2010 and approved by Captain Baptista and Inspector Galen Frierson.

25. In further support of his line of duty injury, there is a Aided Report made by P.O. Thomas Rodriguez and a Witness Statement – Injury to Member of the Department by P.O. P. Shivers--both attesting to the hearing loss in plaintiff's left ear as a result of the extremely loud music at the Wingate Concert.

26. As part of his yearly qualification, Lt. Yarusso went to the "C" Range at the Outdoor Range in the Bronx on March 18, 2010. As he was shooting his qualification course of fire, he heard a loud noise in his left ear and requested that he leave the line. Both P.O. Auty in the Tower and P.O. Louis who was working the line both inspected his hearing protection and saw no visible defects.

27. It should be noted that these officers both attested to the fact that Lt. Yarusso was following correct police procedure instructions prior to claiming the left ear injury.

28. A further Line of Duty Injury Report was initiated because as a result of the mandatory shooting qualifications, Lt. Yarusso developed tinnitus which has not dissipated.

29. At the time of this Wingate Concert incident, Lt. Yarusso had passed and was scheduled to be promoted to the civil service rank of Captain (Captain's Exam #5535,

6

List #183). Because of being medically restricted, he was not promoted. This is a substantial loss of salary and ranking to Lt. Yarusso.

30. Lt. Yarusso has obtained a hearing aid and now has the hearing ability of a non-hearing impaired individual. A hearing aid is a corrective device which does not impede an officer from fully performing his or her duties.

31. His treating physician, Andrea Varnbutas, M.D., of the Department of Otolaryngology and Communicative Disorders at North Shore Long Island Jewish Medical Center, has opined that Lt. Yarusso now has near normal hearing and should not be restricted whatsoever in his employment.

32. Many members of the NYPD wear corrective eye glasses or are fitted with a prosthesis to correct a physical impairment and these officers are not subjected to restricted duty status.

33. A Step III grievance letter was filed by the Lieutenants Benevolent Association on September 10, 2010 with the Deputy Commission of the Office of Labor Relations explaining the failure of the NYPD to expediently return Lt. Yarusso to full duty status and to be promoted to the rank of Captain. Said grievance was denied by Deputy Commissioner John P. Beirne on October 22, 2010.

34. On or about December 30, 2010, Lt. Yarusso requested a re-evaluation of his line of duty status. He submitted a report from his treating doctor, Andrea Vambutas, M.D., stating that the acoustic trauma experienced by him on August 24, 2009 directly caused his sensorineural hearing loss.

35. Further in support of his request for re-evaluation, Lt. Yarusso submitted his most recent United States Air Force required hearing examination results, dated March 9, 2002, which indicated perfect hearing in his left ear. The Air Force only administers this type of test approximately every five years. During his twenty-two years with the U.S. Military Services, Lt. Yarusso has always maintained consistent perfect hearing.

36. On or about November 23, 2010, Lt. Yarusso had another audiometric test. The findings were function gain with the hearing aid in his ear. The recommendation based on that testing was to continue use of the amplification device and audiologic re-evaluation and monitoring in one year.

37. The Medical Board of the New York City Police Pension Fund issued a determination on January 5, 2011. After their review of the medical records and their interview with Lt. Yarusso, they found enough objective evidence to recommend approval of the New York City Police Commissioner's application for Ordinary Disability Retirement.

38. Lt. Yarusso had no prior hearing loss before he worked the Wingate concert. There are no medical records indicating any type of audio problem. Therefore, it is only logical to assume that the hearing loss is attributable to the excessive noise at the concert. This allegation is supported by the medical report of his treating physician, Dr. Vambutas. After he received the hearing aid, Lt. Yarusso was completely able to return to active duty status without any restrictions.

39. For the NYPD pension board to decide plaintiff Yarusso can no longer perform the required duties is inconsistent with the medical findings and contravenes even the NYPD surgeon's recommendation.

40. An Ordinary Disability Retirement is valued at 50% of his salary whereas an Accidental Disability Retirement (also known as Line of Duty Retirement) is valued at 75% of his salary at the time of retirement. It is clear that Lt. Yarusso suffered his hearing loss as a result of being exposed to the extremely loud noise at the Wingate Concert. To deny him an Accidental Disability Retirement is a complete disservice of his seventeen years as a member of the NYPD. He has had an exemplary career and deserves to either be returned to full duty status and promoted to Captain or, if the NYPD feels Lt. Yarusso can no longer perform the functions of an active duty police officer, then he should be given a Line of Duty Retirement.

41. It should be noted that Lt. Yarusso is aware of other officers who have hearing aides and have been allowed to continue working without restriction. Moreover, the NYPD Commissioner, Raymond Kelly, wears a hearing aid.

42. The NYPD does not punish officers who wear eyeglasses or prosthetic devices. Plaintiff Yarusso should not be treated differently. Like any other officer who was permanently injured in the line of duty, Lt. Yarusso should be given the same treatment and be permitted to retire with a Accidental Disability Pension.

## FIRST CAUSE OF ACTION

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "42" as if fully set forth herein.

44. Plaintiff alleges that the foregoing actions by defendants violate the Americans with Disability Act, 42 U.S.C. §12101 *et seq.*, in that defendants' actions constitute an unlawful employment practice because of his disability.

45. By their actions, defendants treated plaintiff differently from other employees on account of his disability and discriminated against him in compensation, benefits, terms, conditions and privileges of employment in violation of the Americans with Disability Act, 42 U.S.C. §12101 *et seq*

46. Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can its actions be otherwise justified under 42 U.S.C. §12101 et seq. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

47. Defendants' acts of discrimination were intentional and were performed with ill will and reckless indifference to plaintiff's protected rights.

48. By reason of defendants' actions and inactions, whereby defendants have engaged in unlawful discriminatory practices based upon plaintiff's disability and need to be reasonably accommodated, plaintiff has been severely damaged. Plaintiff has been forced to retire (without a disability pension) and has been otherwise greatly injured. In addition, plaintiff has incurred attorney's fees in order to rectify the situation.

49. By reason of the foregoing, plaintiff has become entitled to appropriate injunctive and monetary relief; compensatory and punitive damages in an amount to be determined at trial together with appropriate interest thereon, and an award of attorney's fees, expert fees, costs and disbursements.

## SECOND CAUSE OF ACTION

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "49" as if fully set forth herein.

51. Plaintiff alleges that the foregoing actions by defendants violated Article 15 of the New York State Executive Law, specifically §296 and §297, in that defendants' actions constitute an unlawful employment practice because of his disability.

52. By their actions, defendants treated plaintiff differently from other employees on account of his disability and discriminated against him in compensation, benefits, terms, conditions and privileges of employment in violation of the violate Article 15 of the New York State Executive Law, specifically §296 and §297.

53. Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can its actions be otherwise justified Article 15 of the New York State Executive Law, specifically §296 and §297. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

54. Defendants' acts of discrimination were intentional and were performed with ill will and reckless indifference to plaintiff's protected rights.

55. By reason of defendants' actions and inactions, whereby defendants have engaged in unlawful discriminatory practices based upon plaintiff's disability and need to be reasonably accommodated, plaintiff has been severely damaged. Plaintiff has been damaged and in addition, plaintiff has incurred attorney's fees in order to rectify the situation.

56. By reason of the foregoing, plaintiff has become entitled to appropriate injunctive and monetary relief; compensatory and punitive damages in an amount to be determined at trial together with appropriate interest thereon, and an award of attorney's fees, expert fees, costs and disbursements.

### THIRD CAUSE OF ACTION

57. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "56" as if fully set forth herein.

58. Plaintiff alleges that the foregoing actions by defendants violate the New York City Administrative Code §8-107, in that defendants' actions constitute an unlawful employment practice because of his disability.

59. By their actions, defendants treated plaintiff differently from other employees on account of his disability and discriminated against him in compensation, benefits, terms, conditions and privileges of employment in violation of the New York City Administrative Code §8-107.

60. Defendants cannot demonstrate any legitimate non-discriminatory reason for the actions complained of herein; nor can its actions be otherwise justified under New York

City Administrative Code §8-107. Any alleged non-discriminatory reason is nothing more than a pretext so that defendants could attempt to mask their actions.

61. Defendants' acts of discrimination were intentional and were performed with ill will and reckless indifference to plaintiff's protected rights.

62. By reason of defendants' actions and inactions, whereby defendants have engaged in unlawful discriminatory practices based upon plaintiff's disability and need to be reasonably accommodated, plaintiff has been severely damaged. Plaintiff has been damaged and in addition, plaintiff has incurred attorney's fees in order to rectify the situation.

63. By reason of the foregoing, plaintiff has become entitled to appropriate injunctive and monetary relief; compensatory and punitive damages in an amount to be determined at trial together with appropriate interest thereon, and an award of attorney's fees, expert fees, costs and disbursements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RICHARD YARUSSO respectfully requests that judgment be entered in his favor and against defendants, CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT as follows:

i) The Court award the appropriate injunctive relief enjoining the defendants and their agents from continuing to engage in the actions complained of herein;

ii) On the First Cause of Action, an award of appropriate injunctive and monetary relief, compensatory and punitive damages in an amount to be

        determined at the trial altogether with appropriate interest thereon; and an award of attorney's fees, expert fees, costs and disbursements;

iii)    On the Second Cause of Action, an award of appropriate injunctive and monetary relief, compensatory and punitive damages in an amount to be determined at the trial altogether with appropriate interest thereon; and an award of attorney's fees, expert fees, costs and disbursements;

iv)    On the Third Cause of Action, an award of appropriate injunctive and monetary relief, compensatory and punitive damages in an amount to be determined at the trial altogether with appropriate interest thereon; and an award of attorney's fees, expert fees, costs and disbursements;

v)    Such further and other relief as this Court may deem just and equitable.

Dated:    New York, New York
August 15, 2011

_____
Leonard Zack (LZ-8144)
LEONARD ZACK & ASSOCIATES
405 Par Avenue, 10th Floor
New York, NY 10022
(212) 754-4050 tel.

**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2011 3602

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

May 31, 2011

Mr. Richard Yarusso
c/o Nancy Warlikowski, Esquire
Law Offices of Leonard Zack & Associates
Attorney at Law
405 Park Avenue, Ste. 1001
New York, NY  10022

Re:  EEOC Charge Against New York City Police Department
     No. 520201101372

Dear Mr. Yarusso:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Thomas E. Perez
                                        Assistant Attorney General
                                        Civil Rights Division

                              by        Karen L. Ferguson
                                        Supervisory Civil Rights Analyst
                                        Employment Litigation Section

cc: New York District Office, EEOC
    New York City Police Department